went to the last case on the calendar, 25-4982 Coleman v. National Indemnity. Good morning, your honors. My name is Alan McGarvey. I represent the worker plaintiffs in this case. I wish to reserve three minutes of my time for rebuttal. Our case pleads that NIC caused a delayed coverage resolution for 17 years, and it did so on two bases. The first, NIC based its strategy and actions on the fact that through over-settlement, because the state couldn't offer a fair amount with the coverage darkness hanging over it. The second... Sorry, with the coverage what? Coverage darkness hanging over it, the Damocles sort. Second, we plead that NIC's conduct was based on an express strategy to exploit the length of litigation, specifically of justice cases, because by delaying long enough, NIC earns more than it pays when it loses that coverage argument on what NIC knew and acknowledged were clear liability claims. Well, let me stop you there for a second and see if we can focus on something. Put aside what NIC's motives were, because at least as I read the Montana cases, if in fact you had a reasonable... They had a reasonable basis for denying coverage, it doesn't matter what their motives were. You might disagree with that, but let me just start with that. I'm trying to figure out why they didn't have a reasonable basis for denying coverage, because if they didn't, then they didn't act in bad faith. And can you focus on that? Yeah. Your Honor, I don't think this case should be resolved. Well, let's assume that I do think it should be resolved on that. And I'm wholly mistaken. I may be wholly mistaken, and you can then convince me why I am. But can you at least tell me whether you contend that they acted in bad faith, which is to say they had no reasonable basis for denying coverage? The argument itself, of course, was a losing argument. They lost it. Now you've lost me. You were trying to say something, and I don't know what the answer to the question is. I'll give you that they delayed this settlement by advancing their defense. And I think what Judge Hurwitz is asking is exactly the question I have. If I give you all of that, which is yes, they had defenses, and it took them many, many years to resolve those. I think you said 17. I thought it was longer. But the question, I think, as a matter of law is whether or not they were unreasonable in delaying, unreasonable in defending. And did you just say that's not what the case should be resolved on? It should not be resolved on. Why not? Because the statute doesn't create a defense if you have a reasonable legal argument. The trial was grounded in that legal argument. Then you have a defense. Okay. So what Judge Hurwitz was just giving you is basically the definition of bad faith, right? And what you're saying is they could have, if I'm really just trying to understand this, you think that's not enough under Montana law? That if they had, in fact, a purpose that was motivated by economic gain, then it wouldn't matter that they didn't have a, or that they had a good faith basis for contesting coverage? If their conduct is grounded in an intent to the delay, regardless of the legal argument, then the legal argument is not. I understand your position and I want to let you give you time to develop it. But I want to ask, I think, a simple question. Are you contending that they didn't have a reasonable legal basis for denying coverage? We do, but it's really not focused on that. If you do, if you do, I understand you don't want to tell me why you are. They lost it on summary judgment, right? And that was the status when these claims were presented. They had already lost all of those arguments. All of the arguments. No, they hadn't. The national case wasn't until later, right? No. Well, it was until 2021, wasn't it? Before our cases were presented for resolution. Oh, no, no. But your cases were settled well before the national decision, were they not? Before the Supreme Court decision. That's right. Yes. But summary judgment from the district court had to come down. They knew their arguments were losing. When did the summary judgment come down? I don't have a date, Your Honor. Even... We settled in, what, 2017 and 2019. It was before that. But the Montana Supreme Court tells me it's not enough that your argument's a loser. You must be presenting it in bad faith. Now, again, you have this other argument and I want to give you all the time you want to get to it. But I'm not sure why it makes a difference that it was a loser as long as they presented it in good faith. I think you can present a losing argument in good faith. But you asked me to articulate, did they do that here? Well, that really is a jury question. And here's why. Did they present it in good faith requires us to consider what was the basis for them advancing that argument and what was the basis for them using that argument, not just making it, not just having it, but delaying it for 17 years? Well, a jury could say that doesn't have anything to do with the reasonableness of the legal argument itself. The basis for your conduct is to delay. The basis of your conduct is that you can hold this coverage darkness and thereby cause not an unfair settlement. And that's what the statute says. The law does not require. You're saying the statute says that because it says the basis for your denial has to be in good faith. The basis for your denial is the focus, not is the legal argument reasonable, but is the basis reasonable? Last point on this, because then I'll give up. But I want to make sure I understand. So your position is even if their legal basis was very, very good. In fact, even if their legal basis was correct, in your view, it doesn't matter because they did it to make more money. Well, I wouldn't go with that second. Well, OK, so I mean, at some point, counsel, that's a really important question. So what's the answer to that question? If the legal argument is strong enough for a jury to say that was the basis of your comment, that's not what I'm asking. I'm asking, let's assume their legal argument was based on a sound legal, sound legal argument, although they eventually lost. That's Reddy's. That's Waters. Those are cases where, yes, they had, even though they lost, they had reasonable arguments. And and they weren't acting in bad faith because they had reasonable arguments. Yes, they weren't acting in bad faith because it was established as a matter of fact on an affirmatively pled defense in a summary judgment hearing that the actual basis. Yeah. So it was that legal argument. So we're trying to get you to tell us why we're wrong as a matter of law. And you started by saying they delayed seven, I think you said 17 years. Right. And and so they acted in bad faith. And I think that is the nub of it, that you're contending that they had an evil. That's my word, an economic motive as a matter of fact, so that even if they're ultimately in the end were vindicated and are able to convince us they had a legitimate legal argument, I think your answer is it doesn't matter. It's not that it doesn't matter. OK, so what is what I'm saying is on these pleadings, they had a motive on these pleadings. They unreasonably don't delay delayed. If we assume that their legal argument also had a reasonable basis, then the question is, did their conduct have a reasonable basis? Did they do it for this reason or did they do it as a matter of facts? The fact question, what do you do with the Reddy's case? How do you deal with the Reddy's case? Because in Reddy's, exactly that happened. There was no there was a pleading that the basis for their conduct was their legal argument. They've never said that. There's no pleading that says that. Well, but but it read is, as I read it, the Supreme Court says that if you have. A good legal basis for context and coverage, the fact that we're not a jury questions not created by the fact that your good legal reason may have been pretextual. No, it doesn't. It doesn't say that. No. Ready says that if you're the only basis, the only question about reasonable reasonableness is the legal question. If that fact is pled and is proven at a summary judgment case, then you look at the legal question and it's a matter of law. But that fact has not been pled in this case. In fact, the only pleading, the only record before this court is that the only basis for their conduct was the delay and the ability to push the value down and to earn more on the settlement. That's the only thing in the record. So we're premature on that. You're saying the point is proven by. Can I interrupt you for a moment? Absolutely. So I am trying to understand your argument, and I think what you're arguing is Gleason that this case is like Gleason's, not Ready's. Exactly. That's exactly what I was just about to say. The point is proven by Gleason. Gleason clearly establishes that merely if you have a reasonable argument on an open question, that's not enough. So in Gleason, the problem was the insurance company had a nationwide policy of denying untimely claims, and the argument was they didn't consider whether that was valid under Montana law. So there was this other reason, even if there's a legal basis of an untimely claim, but that's not why they denied. They denied because of this national policy. And you're shoehorning, you're trying to shoehorn the facts here into that by saying whether there was coverage or not, they didn't decide on that basis. They were really deciding on a policy to delay for the sake of float of earning money, which was also pled and is, therefore, on the record, a nationwide policy. So we can distinguish those two cases. But what you can't get around is that Gleason makes clear that if there is a fact question on what your conduct was based on, you don't even get to the question. No, but Gleason says if you didn't even bother to investigate whether under Montana law you had a good defense, then you might have a bad faith. But you don't contend that they didn't investigate under Montana law whether they had a good defense. It got litigated in a war, it got litigated in front of the Supreme Court, and then summary judgment later. You're contending that it wasn't their real motive, and I'm not sure Gleason stands for that proposition, does it? It exactly does, because, of course, if in Gleason, their sole basis was a good faith to test this issue, then they would have acted in that fashion. Doesn't the court find in Gleason that you never really investigated whether you had a defense, at least for purposes of summary judgment, whether you had a defense under Montana law at all? That's different in this case, I think, where I don't think it's doubted that they put up a vigorous defense under Montana law. They even convinced one justice of the Supreme Court they were right. Well, again, Your Honor, the point that I'm trying to make, and the most important point for this appeal, is Gleason makes clear that it's not enough just to have a reasonable argument. Yes, even if it's a reasonable argument, that's not enough. Now, what are the circumstances where it's not enough? One circumstance is the Gleason case, when it really had nothing to do with that argument. Our pleading says that their argument had nothing to do with the basis for their conduct because they didn't care if that argument won. They win even when they lose. That's a Gleason type case. What's another circumstance that falls under this rule? It's the Dragon Y case. Dragon Y says that delay alone is actionable. Delay alone is actionable. That brings us to this question. Was there a reasonable legal argument that supported delay? They've identified none. There was no reasonable basis for delay. What is your answer to Judge Hurwitz's point that this is not a unanimous opinion from the Montana Supreme Court? It quotes extensively from Orr, the earlier case. On the occurrence issue alone, it seems really tough to say there was no good faith dispute here. What's your best shot on this, sir? My best shot is this, that at the time they were addressing these settlements, they had already lost those coverage arguments on summary judgment. They really were not relying on them. And therefore, the fact question is, was there some reasonableness, but is it the basis for their conduct? Or was it these other bases, like there was another basis in Gleason? And further, even if they're not another basis, can they delay it for 17 years and not pay the consequence that the Dragon Y, we've pledged a Dragon Y case. We've pled a Gleason case, and on the pleadings before this court, there's no affirmative defense, there's no statement from anyone saying, we didn't want to delay. We wanted to resolve this case on its merits. It's not before you- We understand your argument, and I'm just looking at your clock. Did you want to reserve that time? You indicated you wanted to reserve. I want to reserve three minutes. I think I've got one more before I'm there. I thought you wanted four. Forgive me. Forgive me, I'm not trying to get in your way. Yeah, just to make that point, there's one other case that we've typed. We've pled a Gleason type case. Yep. We've pled a Dragon Y type case. We've also pled a Kyrus type case. They say motive doesn't matter. Kyrus holds that a cause of action is stated. If you say that you brought a case in bad faith, regardless of the merits of that appeal, and that that question is for the jury, we've pled a Kyrus type case. We've pled motive, it's unrefuted. We've pled other reason, like in Gleason, it's unrefuted. And we've pled the unreasonable delay of 17 years, which national indemnity has already said, was unjustifiable, was unnecessary, and it was unreasonable, and it caused prejudice. Four different ways that we get there, no competing pleading. Thank you, counsel. I'll reserve my two and a half minutes. Yes, that's fine, thank you. May it please the court. Bryce Friedman from Simpson Thatcher and Bartlett for National Indemnity. Thank you for allowing me to argue that the district court's judgment should be affirmed. I'd like to begin my response to some of the comments and your questions with the statute, with the Montana Code 3318-242. An insurer may not be held liable for bad faith if the insurer had a reasonable basis in law or fact for contesting the claim or the amount of the claim. It's an objective standard, and it doesn't use the word conduct. The Montana Supreme Court has said very clearly, we have never held an insurer liable in bad faith for failing to settle within policy limits when it had a reasonable basis in law or fact for contesting coverage. It said that in Friar in 2013, and it repeated it after Gleason in 2019 in the Diamond Y case. His argument in part, and I think in large part, is that the defendants acted to starve them out. And that he, just before he left the podium, your friend said that your team has conceded that the 17 years was not justified. I did read the reply brief with interest in this focus on delay for the first time. I'm not sure where that concession is in the record or reference. I don't believe- How did it take 17 years? Well, let me answer that question directly by pointing to the court, to the NIC decision, which is the NICO 2021 decision from the Montana Supreme Court. And I'm not sure we called this out as clearly as we could have in our brief. And I want to call out paragraph 18 now. It says, quote, claims that were not settled as of February 23rd, 2012 and which were tendered after that date, essentially all future claims. For these claims, Nationals' declaratory judgment action was timely. Those are his clients, his clients. But all that the timeliness of the action establishes is that you're not a stop to deny coverage. Well, it is- You're not a stop to deny the duty to defend. This delay argument is irrelevant, but this statement also establishes it was wrong. The way you get a safe harbor in Montana and many other states for that matter from a bad faith claim, and it's very clear in Montana, is you file a declaratory judgment action. Well, that's what I was asking, is the filing of- I didn't understand Montana law on that point, so I want to ask you. Is the filing of the DEC action a defense against a bad faith claim, or is it only a defense against the duty to defend claim? Well- I thought it was the latter, not the former. Well, effectively, both. And what- Well, not effectively. Tell me what Montana case says, that as long as you file a DEC action, you can't be held in bad faith. Well, because if you lose all your defenses- No, no. Tell me what Montana case says that. Well, there is no need to in that case, because you're exposed to extra contractual damages in the case of failing to defend. And- No, but I'm asking a very simple question.  I think there's the answer is that there isn't one, but I want to make sure. Is there a Montana case that says filing a DEC action, a timely DEC action, insulates you from a bad faith claim for failing to cover? Not off the top of my head that I- Because that wouldn't make any sense to me, because you could act in the worst bad faith in the world. And then file a DEC action. And then you would be insulated. Well, correct. But this is the key point of what I'm trying to get at is, my friend is trying to take advantage of the two parts of the Montana Supreme Court decision. There was a delay and there were defenses waived as to individuals who are not his clients, who had their claims settled years before him. And the Montana Supreme Court is very clear about that. But what they said as to his clients is- What they said was that the DEC action was timely. Correct. And that's- That's all they said. And my question was, why did this take 17 years? That's how we've started here in this colloquy. It did not take 17 years as to my friend's clients. My friend's client's claims were filed after the DEC action started. How long did it take to resolve these claims? They were settled within two years of being filed. By the state of Montana. Correct. Right. But it would took nine years for you to acknowledge. Well, it took the NECO decision to eventually get you to acknowledge coverage. Those are the court processes in Montana. Yes. And as you pointed out, with respect to the NECO decision, the positions my client took with respect to coverage were clearly not wholly unreasonable because there was a dissent that said she would have ruled entirely in favor of NECO's position. And even the majority position says, look, you had reasonable arguments based on or, but we're now going to reject them. Correct. But I don't think your friend is really pushing very hard on the notion that you had a reasonable basis to deny coverage. He's saying that wasn't, they pled it wasn't your real basis. Your real basis was greed and avarice. Yeah. Because Warren Buffett said so. And so can you deal with that? Sure. Let's just say what we're talking about here, which is this term float, which is used in a pejorative way. But I think what float means is collecting insurance premiums today to pay out claims tomorrow, which is a description of the insurance business, whether it's health insurance or auto insurance, or like in these cases, a current space liability by nature. He's using it to include that, collecting the premiums, holding on to the premiums, delaying in the resolution of the claim. So you're not paying out the claims that he's that's what he's talking about, as we all recognize. So, OK, so the allegation that we engaged in the business of insurance is not an allegation that turns a claim that should be dismissed under the law into one that should not be or one that goes. Well, let me let me rephrase their claim a little bit. I'm not sure this is what they pleaded, but I'm going to give them a benefit of the doubt for this question. Their claim was, yeah, you probably had a good basis for denying coverage, but you waited a long time because you'd make more money by doing that. And had you had you not denied coverage for so long, we would have gotten a better settlement. Now, I don't know how one proves all that. And but nobody's fighting about that at the moment. Nobody's fighting about whether the Montana statute would actually support a claim under this circumstance. So what's what? Why? Why doesn't that plead a cause of action? First, you had a good defense, but you waited a long time before you brought the deck action, because first of all, that those facts are not pled in the complaint and neither are the facts that are right. That's what I said. I'm rephrasing their complaint. But let's let's just let's just take them at face value, the arguments that he makes. I mean, the the argument and this is why I started with the fact that we did not delay as to his clients. The the declaratory judgment action was filed on the day they filed their personal injury claims that that was the day it was filed. There can be no claim of delay in that circumstance because then we're at the mercy of how fast court proceedings go. We did exactly what the Montana Supreme Court, even in Nico, said we were supposed to do, which is have a DJ file to address those coverage claims right away. Why did it take nine years to get to the Supreme Court? I don't know the precise answer to that. It was it was a long litigation, and sometimes these things take a long time. Twenty twenty one, by the way, that was in the middle of covid. And that argument took a long time to get scheduled. Some people did they have in person argument? Yes, but not everybody was there in person. Yes, not all the bench was there in person. Not all the lawyers were there in person. It was a very complex exercise at the end of twenty one. I understand, at least from the mediation that you and you, the insurance company and Montana were engaged in settlement discussions at least some point along the way. This was not a case of abandonment. There were discussions. Counsel, was that a yes? Yes. Thank you. I'm just trying to get you to answer the questions and I'm listening carefully. If you could focus on that, that'd be helpful. Actually, it wasn't a track. Yes, there was involvement by the insurance company the entire time. It is is is is while the declaratory judgment action was pending. In fact, they defended paid money to defend the claims under a reservation of rights during that time as reflected in the opinion. There's a couple other things I'd like to mention. This is not Gleason and the law friar still still stands after Gleason. And this is not Gleason for a few reasons. I think one is Gleason is a is a first party case, meaning it's not about defending and settling a third party claim. The second is the the fact that Gleason was not about the friar situation, which is what our case is about, meaning there was a reasonable debate of coverage is consistent with the diamond wide decision, which says yet again, we have never decided that there can be bad faith in a case where there was a reasonable basis to deny coverage. Those were all first party cases, weren't they? No, they were not. I believe it was third party cases like the third party cases, except I'm sorry, I want to put it differently. They were third party cases where the where the defendant assigned his claim. Correct. So they're really, in that sense, really a first party case because we're looking at whether or not there was bad faith on behalf of the insurer against the insured. Yes, all yes. In all those cases, it's just who brought the claim was different. But the key point about Gleason is the court had determined that there was no reasonable basis to deny coverage in that circumstance. That's what makes this extremely different. And the cited cited reason just sort of didn't pan out. If they don't do an investigation, the fact that they later stumble into something that gives them that that doesn't help them under Montana law. That's just not that remarkable a proposition. Correct. And so so we are in a very different situation here. And then I don't want to lose sight of the fact there are two roads under Montana law, both of which were covered by the district court in this case to find a reasonable basis. One is there's a reasonable basis to contest coverage. And the other is there's a reasonable basis to contest liability, meaning the liability of the state to the plaintiffs themselves. And as the district court correctly went through the analysis in this case under or there is no doubt that there was a reasonable question as to liability to these particular plaintiffs at the time they filed their claim. There was no no doubt under or however, that you're that Montana owed a duty to these plaintiffs, right? Correct. But lots of people owe lots of duties to other people. That doesn't mean you're necessarily liable to them or how much you're liable to have an injury. Part of the problem here is I think they're entitled to be inconsistent. But I find the Montana Supreme Court a little bit inconsistent. I would have thought that after or if they said you knew about it and you had a duty that it was pretty clear there was liability. But when we get to NACO, they say, well, maybe you discharged your duty by telling the union and telling them the mine owners. But your point is that at the time what you had to go on was or right, we hadn't gotten that far yet. And so there's this much more recent decision that changes the landscape in the way Judge Hurwitz has described.  And beyond that, we have, of course, their admissions and their judicial estoppel on the same point. Well, can I thank you for getting to that because I want to ask you about it. I'm just not sure that their admissions that it's reasonable. Essentially, what they did, our settlements were reasonable, gets us very far because I think they have to be read in light of coverage darkness, don't they? No, wait, wait. These were reasonable amounts because we're still fighting. You know, I understand Montana. You didn't know whether you were covered. So this is you know, we think this is a reasonable settlement. Look, you have to take their admissions. I submit and their statements to another court at face value. And what you just characterized respectfully, their statements as or not what their statements were, what their statements to the Montana State Court were specifically specifically that there were numerous disputed factual questions and unresolved legal issues. They did not have to say that they didn't have to say at the time of settlement at the time of settlement. Correct. And I want to add that the district court's decision that these were admissions and they should be a stop from walking away for them is entitled to abuse of discretion review. And there is absolutely no way I would submit that given the clarity and the directness with which those statements were made to the district court in oral argument. Well, they're really not admissions, are they? They are. You're really contending judicial estoppel. As to the settlement, I'm contending judicial estoppel. And as to the admit to the in-court statements in this case to the district judge, I am contending they are admissions that and that they should be a stop from walking away from them in this court. So I am contending both. And again, those are entitled to abuse of discretion review. And I don't think that the judge's reliance on their very clear statements to one court and saying the opposite to this court is an abuse of discretion because it is certainly not. In this court, in the Dzukulat case, which is a different context, D-Z-A-K-U-L-A, affirmed a dismissal in which a judge did a similar sort of exercise. Counsel, I'm going to just interrupt you for a minute to get in a word of advice and make sure my colleagues are able to get their questions answered. Judge Beatty, do you have any questions? I don't think we have any further questions. OK. Well, with that, I will rest and appreciate the argument time. Thank you.  Please. Judge Hurwitz, you made the point about, well, there was or and then the national indemnity case kind of changed. Here's the question. What did NIC know and what did it believe? Or established the legal duty and NIC stood up and admitted that every single fact of liability was established on undisputed evidence. That's what they knew. Let's get to. Well, tell me when they tell me when they stood up and did that. In the hearing before the court in the summary judgment case in the coverage case. And we cited that that hearing extensively. They stand up and say that there is no they said there's no disputed fact as to liability. But did they say that fact established liability? I think they said this. I think they said both very clearly. I only read him as saying one that there was that there was the record. There's no fact dispute here. But I don't think they they took the position that liability was clear. I think they did, Your Honor. We quoted it exactly. Please look. I know that's why I read your quote. That's why I'm answering. All right. So the the other point here that I think is really important is you're asking questions that suggest that the Supreme Court has said that if you have a reasonable legal argument, you've got to get out of jail free card for the most egregious conduct, the greatest delay, the most profitable. All of that is get out of jail free card because the issue is whether the legal argument is reasonable. I'd ask you to look at paragraph 59 and 62 of the Gleason decision. Quote, the relevant inquiry in determining whether an insurer acted unreasonably under the UTPA is how the insurer acted, given the information available to it. Then in paragraph 62, the court explains that therefore the precedent fact that must be quote, whether the insurer had reasonably grounded its denial on a legal conclusion. Close quote. And Gleason holds that fact was for the jury to decide. I think your phone wants you to stop. Is that your is that your is that you who's who's dinging? I don't know how to stop it. Oh, I thought it was. I wish all lawyers would carry it up there with them. So it would remind us. It stopped. It was somebody else's bell, apparently. Anyway, thank you for your argument, counsel. Oh, it was us. Thank you for your argument, for your advocacy. We're going to take that case under advisement and and stand in recess for the day. Thank you.
judges: CHRISTEN, HURWITZ, BADE